No. 11,578.

## PEIRCE v. HIGGINS ET AL.

SURETY.—*Subrogation.—Equities of Surety on Appeal Bond Against Purchasers.*—A surety on an appeal bond has a right to be subrogated to the lien of the judgment appealed from and paid by him, and his equities are superior to those of a purchaser in good faith who buys the land on which the judgment is a lien after the execution of the appeal bond.

SAME.—*Appeal Bond.—Effect of.*—The undertaking of the surety in an appeal bond to pay the judgment does not cut off his right to subrogation, and persons who buy after the execution of the bond are chargeable with notice of his right to subrogation.

From the Shelby Circuit Court.

*T. B. Adams* and *L. T. Michener*, for appellant.

*B. F. Love, A. Major* and *H. C. Morrison*, for appellees.

ELLIOTT, J.—The contest is here waged between the appellant and James C. Collett, one of the appellees, and it is only necessary to state such facts as relate to that contest. We extract from the special finding and state in an abridged form those facts. On the 9th day of March, 1879, William Peirce, the appellant, bought a tract of land from Martin Higgins, paid the purchase-money in cash and by discharging a mortgage lien existing on the land, and received a warranty deed. On the 3d day of July, 1878, Zerelda Kendall obtained a judgment against Higgins for $424.14, and the court decreed that the judgment was a lien on the land which Higgins afterwards conveyed to the appellant. In November, 1878, Higgins appealed from that judgment and executed an appeal bond with Collett as surety, wherein it was agreed that Higgins should prosecute his appeal and pay the judgment that might be rendered or affirmed against him in the Supreme Court. The appeal was unsuccessful, and in May, 1881, the judgment was affirmed. Of the judgment in favor of Zerelda Kendall and of the appeal the appellant had notice at the time he bought the land. Sale was made on that judgment and decree, and Zerelda Kendall bought the land for $686.86 and received a sheriff's certificate. This certificate subsequently passed into the hands of William and Isaac Thompson. In June, 1882, the appellant, to protect his title and prevent eviction, purchased the sheriff's certificate.

It is argued with much force and no little ingenuity, that the appellant by operation of the doctrine of subrogation is entitled to the rights which Zerelda Kendall had against Collett upon the appeal bond. As not infrequently happens, an elaborate argument is sapped by one defect in the foundation upon which it is constructed. A defect in one spot in the foundation of a structure may sometimes overthrow it as

effectually as many, and that happens in this instance. The infirmity here is, that the foundation of counsel's argument rests upon the implied assumption that the purchase from Higgins was made prior to the judgment in favor of Mrs. Kendall and prior to the appeal; while the truth is that the appeal was taken several months before the purchase. This is a ruling fact, and it stands in the appellant's path to success, effectually barring his progress.

The surety in the appeal bond had a right to assume that the judgment bound the land, and that if he was ultimately compelled to pay it, he would be subrogated to the rights of the creditor and could seize and sell the land upon which the judgment lien rested. When the appellant purchased, he was bound to take cognizance of the legal rights of the surety. It is a fundamental principle that a party who has full knowledge of the facts is bound to know their legal consequences. *Trentman* v. *Eldridge,* 98 Ind. 525; *Anderson* v. *Hubble,* 93 Ind. 570; S. C., 47 Am. R. 394; *Dodge* v. *Pope,* 93 Ind. 480, *vide* p. 487; *Barnes* v. *McKay,* 7 Ind. 301. The essential thing in such cases as this, and in cases of a kindred character, is knowledge of the facts, for, when this exists, knowledge of legal consequences is necessarily implied.

The surety's right to subrogation comes into existence with his contract; his rights flow from that contract and accrue when it is executed. His own acts may impair them; the acts of others can not. These rights continue in undiminished vigor from their inception until the termination of his liability. It needs no particular form of contract to create them, for they are created by law and are legal incidents of the undertaking. Parties who subsequently acquire rights with notice of a lien securing the debt for which the surety has bound himself can not deprive him of his rights to be subrogated to that lien. The plainest principles of justice forbid that a purchaser of land bound by a judgment lien should be preferred to a surety who has undertaken to pay the judgment in order to secure for his principal the benefit of an appeal.

The surety contracts with reference to the facts existing at the time the contract is entered into, and it is then that his rights are fixed. If, when he enters into the contract, the creditor is secured by a lien on the property of the principal, that lien enures to his benefit, and no subsequent intervening rights can displace those vested in him by the law. The case of *McClung* v. *Beirne*, 10 Leigh, 394, closely resembles the present, and it was held that the equities of the surety on an appeal bond were superior to those of a subsequent purchaser, the court saying : " I am of opinion that there is no error in the decree in substituting the appellee" (the surety on the appeal bond) " to all the rights and remedies of Callison " (the judgment creditor) " under his original judgment. To the benefit of it he had the clearest right, upon the ordinary and well established principles of the court." This conclusion is in harmony with long settled principles of equity. In speaking of the principle of subrogation, Lord BROUGHAM said, " It is hardly possible to put this right of substitution too high, and the right results more from equity than from contract or *quasi* contract; unless in so far as the known equity may be supposed to be imported into any transaction, and so to raise a contract by implication." *Hodgson* v. *Shaw*, 3 Mylne & K. 183. This principle has been so often recognized, and the general doctrine of subrogation has been so often discussed by this court, and is so well understood, that we deem it unnecessary to refer to the cases.

It is true that the surety on the appeal bond undertook to pay the judgment, but the principles of equity entered into that contract as a silent but potent factor. The principles of law enter into all contracts, and parties in contracting assume that the law is one of the elements of their contract. It is never necessary to embody the law in an agreement; it goes into it without any express provision. The law entered into the contract of Collett and gave him a right of subrogation, and that element can no more be excluded than can any other. He contracted, therefore, upon the assumption that the lien

of the creditor would enure to his benefit, for this the law affirms. The law vested in him this right of subrogation just as much as it vests in a surety a right to recover from the principal money which he has been compelled to pay for him. The rights of the surety in this instance were fully fixed before the appellant acquired an interest in the land, and, as one of the rights vested in the surety was that of subrogation to the lien of the judgment which he undertook to pay, the right of the surety to compel the land to pay the judgment is superior to any equity of the appellant. The surety was first in point of time, and, under the well-known equity maxim, must prevail.

As the surety had a clear right of subrogation from the time he entered into the contract of suretyship, he has the senior equity as against the appellant who bought after that right had fully vested, and the latter can not save his land at the expense of the former. The conclusion of the whole matter is that the action against the surety has no foundation, for a surety can not be postponed in favor of a purchaser who purchased with full knowledge of his rights.

The special finding affirmatively shows that no injury resulted to the appellant from the ruling on the motion to strike out part of the complaint, and even if there was error in that ruling, it was a harmless one, not warranting a reversal.

Judgment affirmed.

Filed March 20, 1885.