The Weed Sewing Machine Company v. Winchel et al.

Filed June 26, 1886.

———————◆———————

No. 12,513.

THE WEED SEWING MACHINE COMPANY v. WINCHEL ET AL.

GUARANTY.—Bond.—Contract.—A bond stipulating that the principal shall perform certain specified things, and that it shall be a continuing guaranty until after notice, is a contract of guaranty.

SAME.—Contract of Agency.—Bond for Performance.—Construction.—Where a contract of agency and a bond given by the agent to secure its performance are executed concurrently, they must be construed together.

SAME.—Liability of Sureties.—The sureties in the bond are not liable for transactions of the agent beyond the scope of his contract, or for failures which do not relate to some duty imposed thereby.

SAME.—Principal and Agent.—Where the contract is that the principal shall consign to the agent machines to be sold or leased by him, as the former's property, the sureties in the bond are not liable for sales made to the agent.

The Weed Sewing Machine Company *v.* Winchel *et al.*

SAME.—*New Contract with Agent.—Merger.—Release of Guarantors.*—Where, after breach of a contract, the performance of which is guaranteed, the creditor and debtor enter into a new contract, by which the amount of damages then due is made payable on a future day, and on terms different from those imposed by the original agreement, the old contract is presumptively merged, and the guarantors discharged from liability.

From the Grant Circuit Court.

*W. W. Woollen* and *J. F. McDowell,* for appellant.

*A. Steele* and *R. T. St. John,* for appellees.

MITCHELL, J.—This suit was brought by the Weed Sewing Machine Company against Winchel and Murphy, to recover on a bond executed by them with and as the sureties of one Sale. The plaintiff sought to recover the amount of a judgment it had previously recovered against Sale, and also the amount of three promissory notes executed by him payable to the sewing machine company, all of which, with interest, it was averred remained due and unpaid. Sale was alleged to be insolvent.

The case having been put at issue, a jury was required to return the facts to the court in the form of a special verdict.

The merits of the controversy may be fully determined by a consideration of the facts thus returned, without regard to some questions which have been discussed relating to the pleadings. Shortly stated, the facts found within the issues are as follows: On the 22d day of November, 1872, the Weed Sewing Machine Company appointed one Dennis S. Sale, of Marion, Indiana, its local agent. The appointment was by a writing which embraces minute and detailed stipulations covering the terms of the agency. The company agreed to consign sewing machines to Sale. These were to be sold or leased by him, as its property, on certain prescribed terms. Sales or leases were to be made for cash, or to responsible parties, whose notes were to be taken payable to the company and endorsed by the agent. An account of all sales and leases, together with all cash and notes received, was to be forwarded weekly, the agent having the right to

retain either in cash or notes a stipulated commission on all sales or leases.

Concurrently with the contract of agency, the bond sued on was executed. It was in the penal sum of $3,000, and recited that it was executed by Sale as principal and Winchel and Murphy as sureties. The condition of the bond was, that Sale would well and truly pay "every indebtedness or liability now existing, or which may hereafter in any manner exist or be incurred, on the part of said Dennis S. Sale to the said Weed Sewing Machine Company, whether such indebtedness shall exist in the form of book accounts, notes, renewals, or extensions of notes or accounts, acceptances, endorsements or otherwise, hereby waiving presentment for payment, notice of non-payment, protest, and notice of protest, and diligence upon all notes now or hereafter executed, endorsed, transferred, guaranteed or assigned by the said Dennis S. Sale to the Weed Sewing Machine Company." It was also stipulated in the bond that it was to "remain in full force and effect, and a *continuing guaranty* until after notice in writing shall have been given and received by said Weed Sewing Machine Company."

On the 15th day of November, 1875, Sale, having ceased to transact business for the company as agent, purchased two machines of it and gave his note for $80. After paying $40 on the note so given, a judgment was recovered against him by the company for the unpaid balance and interest. In April, 1876, the agency having terminated in September, 1874, upon an accounting and compromise of the matters involved in the business, $600 was agreed to be due from Sale to the company. This indebtedness grew out of the failure of Sale to pay over money which had been received by him from time to time, and which belonged to the company, as appeared by his reports made from week to week, as his contract required. These defalcations, beginning about thirty days after the agency commenced, and increasing gradually until the agency terminated, were exhibited on the weekly

reports. They were known to the company and unknown to the bondsmen. When the accounting and compromise were had, Sale was solvent, and the company took his three notes due in twelve, twenty-four and thirty months for $200 each, with eight per cent. interest, and ten per cent. attorney's fees. This settlement did not include the note for the machines sold to him in 1875.

The jury returned, that Sale executed the notes in settlement of his account with the company. The notes were payable at a bank in this State. The sureties had no knowledge of the indebtedness, and gave no consent to the settlement. If they had known of the indebtedness—Sale being then solvent—they could have secured themselves. Before they were informed of their liability, Sale went into bankruptcy, and was, at the time of the trial, a non-resident of the State. The sureties had given no notice of a desire to be released from the bond.

Reckoning the judgment and notes, the principal, interest and attorney's fees amount to about $1,300. Upon the facts returned, a judgment for the defendants was entered. To reverse the judgment, this appeal is prosecuted.

The question is suggested incidentally whether the obligation of the bondsmen is that of guarantors or of sureties. The bond is essentially a collateral engagement, into which the sureties have entered with their principal, the performance of whose original contract is thereby guaranteed. It stipulates on its face that the principal shall "well and truly" perform certain enumerated things, and that the bond shall be a "*continuing guaranty*" until after notice. In its nature, and by the very terms of the writing, this was a contract of guaranty. *La Rose* v. *Logansport Nat'l Bank,* 102 Ind. 332; *Singer M'f'g Co.* v. *Littler,* 56 Iowa, 601.

Whether their obligation was strictly that of guarantors or sureties, is, however, in this case of secondary importance, as in either event the conclusion upon the facts returned must have been the same.

The bond and the contract of agency, having been executed concurrently, must be construed together. It can not be assumed that the bond was intended as a security for the payment of debts which were not contemplated in the contract of agency, or a guaranty for the performance of obligations wholly outside of the contract with which it was executed. Its scope must, therefore, be restrained to the terms of the contract between the sewing machine company and Sale.. *Burns* v. *Singer Manufacturing Co.*, 87 Ind. 541; *Irwin* v.. *Kilburn*, 104 Ind. 113; *City of Lafayette* v. *James*, 92 Ind.. 240 (47 Am. R. 140).

The bond having been executed presumptively with reference to, and to secure the performance of, the contract of agency, the liability of the sureties can not be extended so as to embrace transactions beyond the scope of the contract with which it was executed, nor can they be held to answer for the failure of the agent, except such failure relates to some duty imposed by the contract creating the relation of principal and agent.

This leads to a consideration of the terms of this contract. It nowhere contemplates that the agent shall become the purchaser of machines; on the contrary, it stipulates expressly that machines were to be consigned to him, to be sold or leased as the property of the consignor, and that such as should remain unsold should be returned to the company at the termination of the agency. Plainly then the sureties were not liable to pay the judgment recovered on the note given for the machine sold after the agency terminated. It could be claimed with as much reason that the bond was a security for a loan of money, or any other transaction wholly disconnected from the agency, as that it covered the sale of these machines.

The sureties are not liable for the payment of the notes taken in settlement of the agent's account. The contract of agency provides for no contingency in which the agent was to execute his notes to the sewing machine company. He

was to receive consignments of machines, and sell or lease them, as the property of his principal. He was authorized to receive on such sales, either cash or the notes of the purchaser payable to the company. If he took notes, his contract required him to endorse them, and to transmit the cash and notes, less his commissions, weekly, to his principal. For any failure to pay notes thus endorsed, or to account for and pay over cash received, the sureties were liable on the bond. For the payment of notes so taken and endorsed by the agent, or for renewals, extensions, etc., of such notes, the bond was a continuing guaranty, as it was, also, that the agent would faithfully account for and pay over the cash which he should receive upon sales or leases.

It will be observed, the notes were governed by the law merchant. They were taken, as the jury find, in settlement of the account of the agent. Without determining whether or not the implication arises from this, that the account was thereby paid or extinguished, the notes were at least obligations different from those provided for in the original contract.

The non-payment of these notes and the judgment against Sale, is assigned in the complaint as the breach of the bond, thereby authorizing the inference that the account was regarded by the plaintiff as liquidated and merged, if not entirely extinguished.

It thus appears that the sureties are sought to be held for the failure of their principal to discharge new obligations, not contemplated by the contract to secure the performance of which the bond was given. Into these are imported new terms. They suspended the right of the creditor to proceed against the principal to collect the original liability, in settlement of which they were given. Because they are new obligations, different in character from those, the performance of which was guaranteed by the bond, the sureties are not liable for their payment. *Weed Sewing Machine Co.* v. *Oberreich*, 38 Wis. 325; *Haskell* v. *Burdette*, 35 N. J. Eq. 31;

*Victor Sewing Machine Co.* v. *Scheffler*, 61 Cal: 530; Brandt Suretyship and Guar., sections 316, 317.

Guarantors and sureties are exonerated if the creditor by any act, done without their consent, alters the obligation of the principal in any respect, or impairs or suspends the remedy for its enforcement.

Where, after breach of a contract, the performance of which is guaranteed, the creditor and principal debtor enter into a new contract, by which the amount of damages then due is made payable on a future day, and upon terms different from those imposed by the original agreement, such new contract presumptively merges the old. In such a case, the new obligation, having been taken upon a sufficient consideration, becomes the exclusive medium by which the rights of the parties in respect to the payment of damages are to. be ascertained. Such a contract is not collateral to the original, but in respect to the subject to which it appertains, it merges and supersedes the other. *Bailey* v. *Boyd*, 75 Ind. 125.

The case is clearly distinguishable from *Lindeman* v. *Rosenfield*, 67 Ind. 246 (33 Am. R. 79).

Without considering other grounds upon which it is claimed the sureties were legally exonerated, upon the reasons already given the judgment is affirmed, with costs.

Filed June 15, 1886; petition for a rehearing overruled Sept. 15, 1886.