## YOUNG v. ALEXANDER.
### No. 953.

District Court, D. Kansas, Second Division.
July 23, 1932.

F. Dumont Smith, of Hutchinson, Kan., for plaintiff.

Blake & Blake, A. M. Cowan, and Hegler & Roberts, all of Wichita, Kan., for defendant.

HOPKINS, District Judge.

The action is one by the indorser or surety to recover on certain promissory notes. A jury was waived and trial had to the court. The pertinent facts as I find them are substantially as follows:

March 12, 1919, the plaintiff, Young, being then the owner of a tract of land in Comanche county, Kan., containing 9,363 acres, and known as the Box ranch, conveyed the same by warranty deed to L. D. Alexander, subject to a mortgage of $25,000, payable to the Illinois Life Insurance Company. The consideration for the transfer of the ranch from Young to Alexander was $40,000 in cash, eight notes of $5,000 each, and one of $4,800, the said notes being due in five years and bearing interest at 6 per cent., to secure the payment of which Alexander executed a second mortgage on the land to the plaintiff Young. Thirteen days later, March 25, 1919, L. D. Alexander and wife conveyed the land in question to the defendant, J. E. Alexander, who ever since has held the title and possession thereof.

In June, 1919, following, the plaintiff, Young, sold and transferred the L. D. Alexander notes and mortgage to one J. E. Stillwell of Pasadena, Cal., with his indorsement thereon. The Alexanders failed to pay the interest to the Illinois Life Insurance Company on the first mortgage, and the plaintiff, Young, took up and paid one interest coupon of $1,500, the amount of which he has never recovered. The Alexanders failed to pay the taxes on the land or the interest on the Alexander notes, and on February 17, 1920, Stillwell elected to declare the whole amount of the mortgage due, and brought suit in the district court of Comanche county to foreclose his mortgage, making the plaintiff and defendant parties. This suit was ready for judgment when, on November 1, 1920, Stillwell and the defendant, J. E. Alexander, entered into an extension agreement wherein and whereby it was provided that:

"And whereas, default was made in the conditions of said mortgage and the said J. E. Stillwell declared the entire sum secured by said mortgage due and payable and the same remains due and payable at this date.

"And whereas, the said L. D. Alexander and wife duly conveyed the said lands to J. E. Alexander, Wichita, Kansas, and said J. E. Alexander desires an extension of time for payment, the same being now due and payable, and there being due at this date the sum of forty-nine thousand four hundred three dollars, with interest at the rate of ten per cent per annum from this date, payable semiannually, which sum the said J. E. Alexander agrees to pay to said J. E. Stillwell or his assigns as follows:

"Forty-four hundred and no/100 dollars on or before ninety days from this date, with interest at ten per cent per annum, and forty-five thousand dollars on or before one year from this date with interest at ten per cent per annum payable semi-annually, all payable at First National Bank, Seneca, Kansas, with privilege of making partial payments any time.

"For the convenience of said J. E. Stillwell, the said J. E. Alexander has executed his collateral notes evidencing the deferred

payments, 9 notes of $5,000.00 each, due Nov. 1st, 1920, and one note for $4,403.00 due on or before Ninety days after date, and all payments made on said collateral notes shall be credited on the mortgage notes described in said mortgage."

Pursuant to the terms of such contract, Stillwell dismissed his foreclosure suit in Comanche county without prejudice.

Stillwell exhibited the collateral notes to the plaintiff, Young, and secured his indorsement thereon, representing that the collateral notes were secured by a new mortgage on the land.

The extension agreement above mentioned which was under date of November 1, 1920, was written and signed by Stillwell and sent by him to the defendant, Alexander, who, with the consent of Stillwell, interpolated in pencil on his copy of the agreement these words: "When L. D. Alexander notes are returned to J. E. Stillwell, the J. E. Alexander notes are to be returned to J. E. Alexander."

The evidence and circumstances surrounding it shows that the extension agreement was to be presented to and approved by the plaintiff, Young, in order to secure his indorsement on the second series or collateral notes, and that the plaintiff, Young, was not informed or advised of the interpolated words written on copy of the extension agreement held by J. E. Alexander.

Stillwell thereafter assigned the second series or collateral notes to various parties in Pasadena, Cal., who in turn assigned them to one Graham for collection. Graham brought suit against the plaintiff, Young, on these notes in the Superior Court of Los Angeles county, Cal., alleging their assignment to various parties who were innocent purchasers and holders for value. Plaintiff, Young, as defendant answered, alleging that he was induced to indorse said notes by the false representation that this second series was secured by mortgage, and that the various assignees were not holders for value, and that Stillwell was still the real owner thereof. Upon these issues joined a trial was had, Graham recovering judgment on one note only, which had been assigned to one Simon. Both series of notes and the Alexander mortgage with an assignment thereof were deposited with the clerk of the court. The plaintiff, Young, offered to pay judgment on the Simon note. The sheriff refused the tender, and levied an attachment on Young's property. Plaintiff, Young, then brought suit to require the sheriff and clerk to receive his tender, release the attachment, and turn over the notes and mortgage to him. Young prevailed, and the sheriff and clerk were required to receive the amount of the judgment which Young then paid in the amount of $6,396.40, and the notes and mortgage were delivered to him.

There appears some controversy as to which series of notes was to be delivered to the plaintiff, Young. I find, however, that neither Stillwell nor the defendant, Alexander, objected to Young's possession thereof, and that the defendant, Alexander, from all the facts and circumstances, was bound to know that the plaintiff, Young, received and held such notes.

In 1923 the Illinois Life Insurance Company brought suit to foreclose its first mortgage. Stillwell, the plaintiff, Young, and defendant, Alexander, were made parties. Stillwell and the plaintiff, Young, filed crosspetitions; Stillwell setting up and claiming to be the owner of the L. D. Alexander notes. At the trial the plaintiff, Young, offered the notes in evidence, and the court ordered them turned over to Stillwell, together with the L. D. Alexander mortgage, and rendered judgment in favor of Stillwell and against the plaintiff, Young, on said notes, for $60,183.-37, giving credit on the total amount of the notes for the amount that plaintiff had paid on the Simon judgment of $6,396.40. This judgment was affirmed by the Supreme Court of Kansas, and was later the basis of a judgment in favor of Stillwell and against Young in the courts of California.

In June, 1926, the plaintiff, Young, paid to Stillwell the full amount of the judgment mentioned in the last finding, with interest, amounting to $67,706.29, at which time Stillwell executed to the plaintiff an assignment of the second series of notes, which is attached to plaintiff's amended petition in this case as Exhibit A.

On May 20, 1924, the date of the Comanche county judgment, Stillwell wrote a letter to the defendant, J. E. Alexander, purporting to release Alexander from liability upon the extension agreement or the second series or collateral notes. This alleged release of the defendant by Stillwell was kept secret and not known by the plaintiff, Young, for something like a year thereafter.

It appears that in July, 1922, the defendant, J. E. Alexander, executed to Stillwell a series of notes covering the amount then due with interest to that time. These notes were renewed from time to time, nothing being

paid on them, the interest being included in the new notes with the principal down to February, 1926, when the last series was issued, and which did not become due until after the plaintiff, Young, had paid the judgment above described to Stillwell. It appears that this transaction between Stillwell and the defendant, J. E. Alexander, was concealed from the plaintiff, Young, and not known to him or his counsel until shortly before the trial of this case.

And so it appears that, at the time the alleged release by Stillwell to the defendant, J. E. Alexander, was executed, Stillwell was still holding the Alexander notes and holding the defendant liable in spite of the pretended release.

I am convinced and find from the evidence and the circumstances that throughout this transaction Stillwell and the defendant, Alexander, were co-operating together to compel the plaintiff, who was surety, to pay the debt of the defendant, who was the principal debtor, and that the defendant, J. E. Alexander, has never paid the balance of the purchase price of said ranch described in the L. D. Alexander notes and mortgage and the extension agreement executed by the defendant, J. E. Alexander, to Stillwell.

It is the contention of the plaintiff that, when the extension agreement and collateral notes were executed and accepted by Stillwell, the defendant, J. E. Alexander, then became the principal debtor, and the plaintiff, having indorsed said notes, became his surety, and that, after the plaintiff, Young, paid the judgment procured against him by Stillwell for such indebtedness and on such notes, he became subrogated to the rights of Stillwell as against J. E. Alexander.

The defendant contends that Stillwell by his letter of May 20, 1924, while the owner of the indebtedness evidenced by the L. D. Alexander notes and secured by a second mortgage, and as the owner of the collateral notes, released him, the defendant, Alexander, from any liability on said notes or indebtedness; that, by reason of the plaintiff's conduct in the case of Graham against Young and the judgment thereon, Young is estopped from maintaining any action against him on account of his having endorsed said collateral notes; that Stillwell, while a holder of the indebtedness represented by the L. D. Alexander and J. E. Alexander notes, having discharged and released J. E. Alexander from all liability thereon, could thereafter assign no rights under said notes against the defendant, Alexander, by transfer to Young,

and that the plaintiff is not entitled to any rights against the defendant by subrogation.

From all of the facts and circumstances, I am of the opinion that at the outset, on March 12, 1919, L. D. Alexander and his wife were the principal debtors; that on November 1, 1920, by the so-called extension agreement, the defendant, J. E. Alexander, assumed and agreed to pay the L. D. Alexander notes and mortgage, and thereby made himself the principal debtor; that the plaintiff, Young, having indorsed the notes, became a surety thereon; that the new notes were given as collateral to the first series; that, when Stillwell took the collateral notes from the new principal, J. E. Alexander, the plaintiff, as surety, acquired an interest in the collateral notes; that thereafter Stillwell could not deal with the defendant Alexander, independently of the rights of the plaintiff as surety.

In 25 R. C. L. 1327, it is said: "A surety on paying the debt of the principal is entitled to be subrogated to the rights of the creditor in all, or any of the securities, means, or remedies which the creditor has for enforcing payment against his principal."

In the same volume, page 1370, it is said, as to the indorser: "An endorser who has paid a note is subrogated to the rights of the holder, for the bill is not discharged and fully extinguished until paid by, or on behalf of the acceptor, or the maker," and at page 1388: "Where security held by the creditor has been released, or a mortgage satisfied, it will be reinstated for the benefit of the surety, who has paid the debt."

In Peirce v. Higgins, 101 Ind. 178, there is a very clear statement in a case very much like this, where it is said: "The surety's right to subrogation comes into existence with his contract; his rights flow from that contract and accrue when it is executed. His own acts may impair them; the acts of others can not. These rights continue in undiminished vigor from their inception until the termination of his liability. It needs no particular form of contract to create them, for they are created by law and are legal incidents of the undertaking."

In 21 R. C. L. 1107, it is said: "As soon as his liability as surety becomes concurrent with the holding by the creditor of other securities for that debt, the surety has an inchoate right to the benefit of those securities, and this benefit is not prejudiced by any further charges subsequently created by the principal debtor in favor of the creditor over the property comprised in the securities."

### Conclusions of Law.

I. The sole legal question involved in this case is the right of a surety to recover from his principal debtor when he has paid the debt of the principal. I find as a conclusion of law that, when the defendant signed the extension agreement by which he assumed and agreed to pay the L. D. Alexander notes, that he became the principal debtor, and the plaintiff continued to be the surety for him; that, when Stillwell took from the principal debtor the notes herein sued upon, the plaintiff, as surety, had an inchoate right and interest in these notes; that thereafter Stillwell, as creditor, could not release the defendant, principal debtor, from these notes, or do anything without the knowledge and consent of the plaintiff, as surety, that would impair the right and equitable claim of the plaintiff in and to these notes.

II. When this second series of notes passed into the possession of the plaintiff, as surety, he had a right, however he acquired them, to hold them as security for his liability to Stillwell.

When the plaintiff paid the debt that the defendant owed under the extension agreement, his inchoate and equitable right to this collateral became fixed and final by the written assignment, Exhibit A, attached to plaintiff's amended petition, and Stillwell transferred to him the legal title to the notes, and thereby the plaintiff's equitable right of subrogation became a legal right and did not require a suit in equity to turn it into such right.

Further, under the Kansas statute, the plaintiff, as surety, having paid the principal's debt, was entitled as a matter of legal right to all collateral which the creditor held. It is not claimed that the defendant ever paid the second series of notes, principal or interest, or any part thereof, and Stillwell could not release him from such payment without the consent of Young, who was surety.

III. In conclusion of the whole matter, the defendant and his brother agreed to pay the plaintiff $84,800 for the Box ranch. L. D. Alexander paid the plaintiff $40,000 of this indebtedness; he was the purchaser of the ranch. In order to secure an extension of time and stop the foreclosure proceedings in Comanche county, the defendant assumed, in writing, the entire remaining debt on the L. D. Alexander notes, and agreed to pay it in a certain manner, and executed his notes to evidence these payments. This he has not done. He has had the possession and the rents and profits of this ranch during the intervening years. He has shown no good reason in law or equity why he should not pay to the plaintiff, his surety, the amount that the surety was compelled to pay for him as principal.

I am of opinion the plaintiff is entitled to recover from the defendant the amount of the Simon judgment paid by him of $6,396.40, with interest at 6 per cent. from the date of payment, and the amount paid on the Comanche county judgment of $67,670.29, together with interest thereon at 6 per cent. from the date of payment, and judgment will be entered accordingly.