**FARMERS LOAN & TRUST CO., Appellant,**

v.

**Robert A. and Hulda Anne LETSINGER, Appellees.**

No. 12S02–9506–CV–747.

Supreme Court of Indiana.

June 26, 1995.

preparation "is not apparent from the record." (Brief of Appellant at 14.)

@=7(1)

Thomas J. Trauring, Fell, McGarvey, Trauring & Wilson, Kokomo, for appellant.

R.C. Richmond, III, Sommer & Barnard, P.C., Indianapolis, for appellees.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

In *Farmers Loan & Trust Co. v. Letsinger* (1994), Ind.App., 635 N.E.2d 194, the Court of Appeals held that the Indiana common law rule should be that when a creditor unjustifiably impairs collateral securing a debt, independent, absolute, continuing guarantors of that debt should be discharged to the extent that the creditor has impaired the collateral. *Id.* at 199–200. Farmers Loan has petitioned this court to transfer the decision of the Court of Appeals, Ind.Appellate Rule 11(B), because it believes that decision is either contrary to ruling precedent of this court,

App.R. 11(B)(2)(a), or that the Court of Appeals erroneously decided a new question of law. App.R. (11)(B)(2)(b). We agree with the Court of Appeals.

### Facts

The Court of Appeals adequately stated the facts of the case, and we simply quote them here:

Farmers Loan & Trust Co. ("Bank") appeals from a judgment denying its recovery on promissory notes guaranteed by Robert and Hulda Anne Letsinger ("Robert" and "Anne", collectively "Letsingers") after the primary obligor on the notes declared bankruptcy....

. . . .

[R]obert and Anne, along with their two daughters and a son-in-law, were the sole shareholders in a corporation known as T–C Crop Care, Inc. ["T–C"]. The corporation engaged in the fertilizer business. On November 21, 1982, the Bank loaned T–C Crop Care $32,998.39. A promissory note reflecting the loan was executed at that time, which note gave the Bank a security interest in all of T–C's plant, buildings, fixtures and equipment, as well as all additions, accessions, accessories, and replacements thereto. The note also granted the Bank a first lien and security interest in T–C's accounts receivable and inventory then owned or thereafter acquired and all products and proceeds thereof. The promissory note was signed by the Letsingers in their capacities as officers of T–C, and also in their individual capacity. On December 31, 1982, the Letsingers executed a separate guaranty on the loan, and later gave the bank mortgages on two houses as additional security for their guaranty.

Over the next several years, additional Bank notes were executed on several occasions. These notes indicated T–C as borrower and were signed by Robert in his capacity as vice president or by Lynn Humberg, T–C's secretary. In early 1985, T–C granted a second lien and security interest in the same corporate property and assets to Erny's Fertilizer Service, Inc. ("Erny's"), which lien was duly perfected. Although this lien was originally

subordinate to the lien held by the Bank, it gained priority after the Bank's security interest expired in 1988 because the Bank failed to re-file a financing statement or to file a continuation statement.

In February 1989, after the Bank's priority lapsed, the Letsingers executed several renewal notes and a new guaranty for T–C's debt to the Bank. Although the Bank was aware of the lapsed security interest, the Bank did not inform the Letsingers that the collateral had been impaired. The new promissory notes contained a waiver of defenses which purported to prevent the Letsingers from utilizing the defense that the Bank's actions impaired the original security for the loan.

On March 31, 1989, T–C filed for bankruptcy. The bankruptcy court ordered T–C to liquidate assets to pay its creditors, the majority of which proceeds went to Erny's based on its first priority security interest. The Bank received a total of $34,163.19 in proceeds and accounts from T–C in satisfaction of the promissory notes. The Bank initiated this action to recover a deficiency of $115,554.41 from the Letsingers.

*Letsinger,* 635 N.E.2d at 195–96.

### Discussion

The trial court specifically found that the Letsingers, in their capacity as endorsers of the promissory notes, were accommodation parties to the notes under Indiana Code § 26–1–3–415(1) of the Uniform Commercial Code. *See now* Ind.Code § 26–1–3.1–419(c) (Burns Supp.1994). As accommodation parties to a negotiable instrument, unless they had consented to the unjustifiable impairment by Farmers Trust of the collateral securing the notes, the Letsingers were entitled to interpose the defense provided for in Indiana Code § 26–1–3–606 (Burns 1992) [§ 3–606], which provided in part:

(1) The holder [of a negotiable instrument] discharges any party to the instrument to the extent that without such party's consent the holder

. . . .

(b) unjustifiably impairs the collateral for the instrument given by or on

behalf of the party or any person against whom he has a right of recourse.

See now Ind.Code § 26–1–3.1–605(e) (Burns Supp.1994). The trial court found that the Letsingers, in their capacity as accommodation parties, did not effectively consent to the bank's impairment of the collateral when it allowed its perfected security interest in T–C's corporate property to lapse. Consequently, the trial court permitted the Letsingers to interpose the defense provided for in § 3–606 to defeat the bank's claim against them as accommodation parties to the notes.

The Court of Appeals affirmed the trial court with respect to Farmers Loan's claim against the Letsingers' liability as accommodation parties. *Letsinger,* 635 N.E.2d at 196–199. In its Petition to Transfer, Farmers Loan does not challenge the decision of the Court of Appeals on this issue. We therefore now summarily affirm, expressly adopt, and incorporate by reference Parts I and II of the opinion of the Court of Appeals. App.R. 11(B)(3).

In its Petition to Transfer and in its brief in support of its petition, Farmers Loan does dispute, however, that the Letsingers were entitled to the same defense on the bank's claim against them on the guaranty, since the guaranty is not a negotiable instrument. Because the guaranty executed by the Letsingers was not a negotiable instrument, Farmers Loan argues, Indiana common law should control, not the UCC and not, in particular, the defense provided for in § 3–606.

### I

■ We agree with Farmers Loan that the UCC does not control this case. The guaranty executed by the Letsingers was not a negotiable instrument because, *inter alia,* it was an unlimited guarantee, and so not a promise to pay a sum certain. Ind.Code § 26–1–3–106 (Burns 1992) (See now Ind. Code § 26–1–3.1–104(a) (Burns Supp.1994)). Because no particular provision of the UCC governs the bank's claim on the guaranty, Indiana common law and the Indiana law of equity control. Indiana Code § 26–1–1–103 (Burns 1992). In its Petition to Transfer,

Farmers Loan asserts that the Court of Appeals decision is contrary to ruling precedent of this court and calls our attention to *Metzger v. Hubbard* (1899), 153 Ind. 189, 54 N.E. 761, *Sample v. Martin* (1874), 46 Ind. 226, and *Cole v. Merchant's Bank* (1878), 60 Ind. 350 or, in the alternative, the bank argues that the Court of Appeals erroneously decided a new question of law. Appellant's Petition to Transfer at ¶ 4.

None of the cases cited by Farmers Loan, however, addresses the question of whether, under the common law of Indiana, a guarantor may avoid making good its guaranty when the creditor has impaired the collateral securing the principal debt. The Indiana Comment to § 3–606 says:

> *Under well established principles of suretyship,* a surety may be discharged where a creditor by a binding agreement with the principal extends the time of payment, alters the principal's obligation, releases, covenants not to sue or discharges the principal, or releases collateral. *This section of the Code applies these general principles of suretyship* against a holder in favor of any party to the instrument who is known by the holder to have a right of recourse against another person (principal) who may or may not be a party to the instrument.

(Emphasis added). And indeed, the history of the impairment of collateral defense, as it has now come to be known since the adoption of the UCC in Indiana, reaches well beyond the birth of the UCC. In *Stewart v. Davis' Executor* (1862), 18 Ind. 74, we said:

> It is a well settled principle of equity, that a creditor, who has the personal contract of his debtor, with a surety, and has also, or afterwards takes property from the principal, as a pledge or security for the debt, is to hold the property fairly and impartially, for the benefit of the surety as well as himself; and if he parts with it, without the knowledge or against the will of the surety, he shall lose his claim against the surety to the amount of the property so surrendered.

*Id.* at 75–76.[1] Against the possible objection that a guarantor is in some way distinguishable from a surety, in *Weed Sewing Machine Co. v. Winchel* (1886), 107 Ind. 260, 7 N.E. 881, we said, "Guarantors and sureties are exonerated if the creditor by any act, done without their consent, alters the obligation of the principal in any respect, or impairs or suspends the remedy for its enforcement." *Id.* at 266.[2]

II

That a guarantor may interpose the defense that the creditor impaired the collateral makes sense for two reasons. First, the guarantor at the time of making a guaranty may make the judgment that the collateral for the loan to the guarantor's principal will be sufficient to cover the debt. If the creditor impairs the collateral, and the guarantor has not consented to release or other impairment of the collateral, the guarantor may become exposed to liability beyond the guarantor's expectation at the time the parties entered into the contract.

In this case, it is undisputed that T–C's corporate property would have covered T–C's debt to Farmers Loan had the bank not failed to refile its financing statement at or before the five-year mark on the loan. Be-

---

1.  *Accord, Sample v. Cochran* (1882), 82 Ind. 260, 262; *Holland v. Johnson* (1875), 51 Ind. 346, 349; *Philbrooks v. McEwen* (1868), 29 Ind. 347, 349; *White v. Household Fin. Corp.* (1973), 158 Ind.App. 394, 400, 302 N.E.2d 828, 832; *see also* L. Simpson, Handbook on the Law of Suretyship § 74 (1950); Restatement of the Law of Security § 132 (1941). *Cf. Owen County State Bank v. Guard* (1940), 217 Ind. 75, 84–85, 26 N.E.2d 395, 398–99 ("One who ... furnishes collateral to secure the loan of another stands in the relation of a surety to the debtor and such collateral is released by any action of the creditor which would release a surety, such as ... the release of other security."); *Southern Sur. Co. v. Merchants & Farmers Bank* (1931), 203 Ind. 173, 199, 176 N.E. 846, 854 (when creditor releases collateral to principal without surety's knowledge, surety is released to the extent of the collateral's value).

2.  *See also Indiana Univ. v. Indiana Bonding & Sur. Co.* (1981), Ind.App., 416 N.E.2d 1275, 1280–81 (quoting *Weed Sewing Machine Co.*); Restatement of the Law of Security § 82 (Suretyship Defined); *id.* § 82 cmt. g. (the words "guaranty" and "guarantor" as used in the Restatement are synonyms for "suretyship" and "surety," respectively); Ind.Code § 26–1–1–201(40) (Burns 1992) ("'Surety' includes guarantor.").

cause the Letsingers did not consent to impairment of the collateral in its guaranty,[3] Farmers Loan exposed the Letsingers to personal liability to which they did not contract. *Cf.* Ind.Code § 26–1–9–207(1) (Burns 1992) (providing that a secured party must use reasonable care to preserve the priority of its claim on collateral securing an instrument or chattel paper).

■ Second, a guarantor who satisfies the principal debtor's obligation to the creditor generally steps into the shoes of the creditor, becoming subrogated to the creditor's claim and assuming both the creditor's rights and duties. *Ertel v. Radio Corp. of America* (1974), 261 Ind. 573, 577, 307 N.E.2d 471, 474.[4] Thus, when a creditor unjustifiably impairs the collateral securing a guarantied loan, it impairs the guarantor's recourse against the guarantor's principal, which recourse the guarantor would have understood itself to have at the time of contracting to guaranty the principal's debt.

### III

It appears to us clear that the Court of Appeals decision was, in the sense meant by Farmers Loan, neither contrary to the controlling precedent of this Court nor one of first impression in Indiana. The Court of Appeals attempted to harmonize Indiana law by extending to non-negotiable guaranties the impairment of collateral defense provided by § 3–606 for negotiable instruments. This undertaking was not really necessary, however, since § 3–606 had already incorporated the general law of surety. That is, § 3–606 extended to negotiable instruments that defense which had previously and for some time been available for guaranties. *See* Ind. Code § 26–1–3–606, Indiana Comment.[5] *Compare Letsinger,* 635 N.E.2d at 199–200.

### Conclusion

For the reasons above, we now grant transfer, summarily affirm, adopt, and incorporate Parts I & II of the opinion of the Court of Appeals, App.R. 11(B)(3), and affirm the decision of the trial court.

SHEPARD, C.J., and DeBRULER, DICKSON, and SELBY, JJ., concur.

---

3. Consent or waiver provisions are quite common in guaranty agreements. *See, e.g.,* Peter A. Alces, *The Efficacy of Guaranty Contracts in Sophisticated Commercial Transactions,* 61 N.C.L.Rev. 655, 672 (1983). Additionally, the great weight of authority follows *Langeveld v. L.R.Z.H. Corp.,* 74 N.J. 45, 376 A.2d 931, 935 (1977), which held that an unconditional guaranty is, by itself, insufficient to waive the impairment of collateral defense. *See, e.g., United States v. Vahlco Corp.,* 800 F.2d 462 (5th Cir. 1986); Donald J. Rapson, *Symposium: The Restatement of Suretyship: History and Background of the Restatement of Suretyship,* 34 Wm. & Mary L.Rev. 989, 996 n. 35 (1993).

4. *See also Peirce v. Higgins* (1885), 101 Ind. 178, 180; *Gerber v. Sharp* (1880), 72 Ind. 553, 557; *Jones v. Tincher* (1860), 15 Ind. 308, 310; *Indiana Bonding & Sur. Co.,* 416 N.E.2d at 1284; *White,* 158 Ind.App. at 402, 302 N.E.2d at 834; *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 137–38, 83 S.Ct. 232, 235–36, 9 L.Ed.2d 190 (1962) (Black, J.) ("[P]robably there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed."); *In re V. Pangori & Sons, Inc.,* 53 B.R. 711, 715–716 (Bankr.E.D.Mich.1985); Restatement of the Law of Security § 141; *id.* § 141 cmt. a; Ronald P. Friedberg, Note, *Construction Sureties: Don't Put All Your Eggs in the Equitable Subrogation Basket,* 41 Case W.Res.L.Rev. 305, 310 (1990); *Unreported Case: United Pacific Ins. Co. v. Ripsom,* No. 7056, 10 Del.J.Corp.L. 337, 342 (1985) (surety does not need to file a financing statement to perfect its right to equitable subrogation).

5. *See also Langeveld v. L.R.Z.H. Corp.,* 74 N.J. 45, 376 A.2d 931, 934 (1977); 1 J. White & R. Summers, *Uniform Commercial Code* § 13–15 (3d ed. 1988); Nathaniel Ruff, Note, *Discharge of Certain Parties to Negotiable Instruments upon a Holder's Impairment of Collateral,* 8 Ind.L.Rev. 522, 523 n. 3 (1975); Barkley Clark, *Suretyship in the Uniform Commercial Code,* 46 Tex.L.Rev. 453, 457 (1968).