S–MART, INC., Appellant–Plaintiff,

v.

SWEETWATER COFFEE CO., LTD.,
Harry A. Wilson, Jr. and Betty A.
Wilson, Appellees–Defendants.

No. 29A05–0002–CV–79.

Court of Appeals of Indiana.

March 28, 2001.

Casey D. Cloyd, Brooke & Cloyd, P.C., Muncie, Indiana, John T. Drics, O'Bryan, Brazill & Drics, Indianapolis, Indiana, Attorney for Appellant.

John Payton, Lehman & Payton, Harry A. Wilson, Jr., Wilson Kehoe & Winingham, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

KIRSCH, Judge

Following a bench trial, S–Mart, Inc. ("S–Mart") appeals from that portion of the trial court's judgment in favor of Harry A. Wilson, Jr. and Betty A. Wilson (collectively, "the Wilsons") on its claim that the Wilsons were personally liable for the debts of Sweetwater Coffee Co., Ltd. ("Sweetwater") arising from Sweetwater's breach of a Lease Agreement. The following restated issue is dispositive: whether the trial court erred in concluding that the Wilsons were not obligated by their continuing guaranty contained in a Lease Agreement because a subsequent amendment materially altered the Lease Agreement.

We affirm.

## FACTS AND PROCEDURAL HISTORY [1]

S–Mart is a closely-held, subchapter S corporation that is engaged in the operation of gas stations and convenience stores in Indiana. Warren Johnson is the president and sole shareholder of S–Mart. Sweetwater is also a closely-held, subchapter S corporation with the Wilsons as its sole shareholders and Betty Wilson serving as president. In 1996, Sweetwater was engaged in the retail gourmet coffee business.

On October 15, 1996, S–Mart and Sweetwater executed a three-year Lease Agreement whereby S–Mart agreed to lease a portion of its convenience store in Carmel, Indiana, to Sweetwater for the purpose of allowing Sweetwater to operate a gourmet coffee business inside the store. The Wilsons signed the Lease Agreement in their individual capacities as personal guarantors. Paragraph 32 of the Lease Agreement contains the guaranty provision, which states:

"32. Unconditional and Continuing Guaranty

As a material inducement to the Landlord to enter into this Lease with the Tenant, and in consideration thereof, Harry A. Wilson and Betty A. Wilson ("Guarantor(s)"), as husband and wife, hereby jointly and severally, and *unconditionally and continuously* 1) guarantee the prompt and full payment to the Landlord when due all financial obli-

---

1. Oral argument in this case was held January 23, 2001 at the Krannert Graduate School of Management, Purdue University. We express our gratitude to our host, the parties, and counsel.

gations and liabilities of any kind (including, without limitation, rent and lease payments) for which the Tenant is now or may herein after [sic] be or become liable to the Landlord, under this Lease or otherwise, and 2) *guarantee the prompt and full performance of* all other duties and obligations for which the Tenant is now or may herein after [sic] be obligated to perform under this Lease, whether any such obligations, liabilities or duties are primary or secondary, absolute or contingent, direct or indirect, and *any and all renewals, modifications, extensions of or substitutions of any of the foregoing liabilities, obligations or duties,* including interest thereon, reasonable attorneys fees and other costs and expenses of collection or enforcement that are or may be incurred by the Landlord in connection therewith (collectively, the "Debt").

Each Guarantor acknowledges receipt of reasonably equivalent value in consideration for the granting of this Guaranty. This Guaranty is a *continuing guaranty.* Guarantors waive notice of acceptance of this Guaranty, and waive any notice, presentment, demand, protest, notice of protect [sic] and notice of dishonor of and with respect to any Debt that is the subject of this Guaranty. No extension of time, forbearance or other indulgence granted by the Landlord to the Tenant, or any Guarantor, and no bankruptcy or insolvency proceeding against or by the Tenant, will release or in any way affect the obligations of the Guarantors. No omission or delay on the Landlord's part in exercising any right thereunder or in taking any action to collect or enforce payment of any Debt or to enforce its right under the Lease will be a waiver of any such right, or release or affect the obligations of Guarantors hereunder, even if any such omission or delay results in any loss to the Landlord."

*Record* at 813–15 (emphasis added).

Sweetwater started operating its business in November 1996, which consisted of preparing and selling gourmet coffee, bakery goods, and sandwiches. In the spring of 1997, S–Mart began expansion and operation of an outdoor grill that it had previously operated on its parking lot as a promotion to attract customers.

Because the outdoor grill served food, and would utilize the kitchen area leased to Sweetwater, both of which would potentially interfere with Sweetwater's bakery and sandwich business, the parties subsequently negotiated an Amendment to the Lease Agreement (the "Lease Amendment"). The Lease Amendment allowed S–Mart to operate the outside grill and use the kitchen area in exchange for which it agreed to reduce Sweetwater's rent by $750.00 per month. During negotiations, Harry Wilson informed Johnson that the Wilsons would not personally guarantee the Lease Amendment.

On June 15, 1997, S–Mart and Sweetwater executed the Lease Amendment. Betty A. Wilson signed as President of Sweetwater, and Warren K. Johnson signed as President of S–Mart. The Lease Amendment made no reference to the guaranty provision in the Lease Agreement. It did not include a signature line for the Wilsons to sign as guarantors and was not signed by them. Johnson testified that he did not intend the Wilsons to sign the Lease Amendment as guarantors. *Id.* at 287, 937–38.

Because Sweetwater was losing money, at the end of July 1997 the Wilsons made a decision to reduce operating expenses by becoming a self-serve operation. Customers served themselves coffee and chose baked goods and paid for them at S–Mart's cash register. When Johnson learned of this, he informed Sweetwater that he disapproved of this new arrangement and would look for a new tenant. In September 1997, with two years remaining on the lease, Sweetwater stopped operations, abandoned the premises, and ceased paying rent.

S–Mart filed its Complaint for Damages in June 1998, alleging that Sweetwater breached the Lease Agreement by failing to pay rent and that the Wilsons were personally liable for all losses resulting from Sweetwater's breach. Sweetwater subsequently filed a counterclaim, contending that S–Mart frustrated or inhibited its business operations.

Following a two-day bench trial in August 1999, the trial court entered judgment in favor of S–Mart for $37,850.00 for Sweetwater's failure to pay rent, and attorney fees and costs. The court further found in favor of the Wilsons with respect to their liability as personal guarantors. Finally, the court entered judgment in favor of S–Mart on Sweetwater's counterclaim.

In pertinent part, the trial court entered the following Conclusions of Law:

"44. This Court finds that a continuing guarantee was created by the language used in Paragraph 32 of the Lease Amendment. However, '[the] extent of a guarantor's liability depends on the terms of his contract.' *Orange–Co. Inc. v. Brown*, 181 Ind.App. 536, 540, 393 N.E.2d 192, 195 (1979). A guarantor is entitled to a strict construction of the contract in his favor.... Thus, the guaranty only continues with respect to risks defined within the terms of the Lease Agreement.

45. The continuing consent given by [the Wilsons], as guarantors, did not include consent to the Lease Amendment since the risks associated with the Lease Amendment were beyond the scope of what was contemplated by them as guarantors when they signed the Lease Agreement. Specifically, their guaranty did not contemplate the Outdoor Grill.

46. In addition to being outside the scope of the prospective consent of the continuing guaranty, [the Wilsons], as guarantors, did not specifically consent to the Lease Amendment. Harry Wilson's testimony that 'we're not going to guaranty this [the Lease Amendment]'

combined with the lack of his or Betty A. Wilson's signatures in their capacity as guarantors clearly demonstrates their lack of consent to the Lease Amendment.

. . . .

51. Where there is a material alteration of a contract without the consent of the guarantor, the guarantor is discharged from further liability whether the change is to his injury or benefit for the reason that it is no longer his contract. *Merchants National Bank & Trust Co. v. Lewark*, 503 N.E.2d 415 (Ind.Ct.App.1987).

52. The Lease Amendment was a material alteration of the Lease Agreement. A 'material alteration' is defined as 'a change which alters the legal identity of the instrument, substantially increases the chance of loss to the surety, or puts the surety in a different position.' *Yin v. Society National Bank Indiana*, 665 N.E.2d 58, 64 (Ind.Ct.App. 1996). *See Merchants National Bank & Trust Co. v. Lewark*, 503 N.E.2d 415 (Ind.Ct.App.1987). In this case, the evidence demonstrated that the Lease Amendment was a material alteration of the Lease Agreement for the following reasons:

(a) It materially altered the nature of the relationship between S–Mart and Sweetwater from a landlord-tenant relationship to that of business competitors;

(b) Warren Johnson and S–Mart knew and understood that simultaneous sales of prepared food from inside the kitchen area and from the outdoor grill were mutually exclusive ... S–Mart knew and knows that the premises can not [sic] support two separate food vendors;

(c) [S–Mart] presented testimony regarding several minor modifications of the Lease Agreement during the lease period that did not warrant a writing. However, the opening of the outdoor grill was a significant change and was

therefore written down in the Lease Amendment;

(d) Harry Wilson, Betty Wilson and Warren Johnson all testified that the Lease Amendment allowing the Outdoor Grill was a significant change;

(e) The risk to Sweetwater was substantially increased due to the competition from the Outdoor Grill;

(f) The $750.00 reduction in the rent was significant. The $3,000 to $4,000 per month that S–Mart stood to gain from the Outdoor Grill was significant."

*Id.* at 404–08.

## DISCUSSION AND DECISION

On appeal, S–Mart does not argue that the trial court erred in concluding that S–Mart's operation of the outdoor grill, which prompted the Lease Amendment, was a material alteration of the Lease Agreement. Rather, S–Mart argues that the guaranty contained in the Lease Agreement specifically provided that it extended to any and all renewals, modifications, extensions, and substitutions of liability.

Initially, we observe that judgment was entered after a bench trial in which the trial court made special findings of fact and conclusions of law. The standard of review for findings of fact and conclusions thereon issued pursuant to Indiana Trial Rule 52(A) is one of great deference. *Lehman v. Shroyer*, 721 N.E.2d 365, 367 (Ind.Ct.App.1999). In reviewing the judgment, the court must first determine whether the evidence supports the findings of fact and then whether the findings support the judgment. *Heiligenstein v. Matney*, 691 N.E.2d 1297, 1299 (Ind.Ct.App.1998). The court will not set aside a judgment unless it is clearly erroneous. *Id.* A judgment is clearly erroneous only if a review of the record leaves the court with a firm conviction that a mistake has been made. *Id.* The court may affirm the judgment on any legal theory supported by the findings. *Mitch-*

*ell v. Mitchell*, 695 N.E.2d 920, 923 (Ind. 1998).

A guaranty is defined as "a promise to answer for the debt, default, or miscarriage of another person." 38 Am. Jur.2d *Guaranty* § 1 (1999). It "is an agreement collateral to the debt itself" and represents a "conditional promise" whereby the guarantor promises to pay only if the principal debtor fails to pay. *Id.* Under Indiana law, three parties are required to execute a guaranty agreement: the obligor or principal debtor; the obligee or creditor; and the guarantor or surety. *Kordick*, 496 N.E.2d at 124. A continuing guaranty is defined as a guaranty that:

> "contemplates a future course of dealing encompassing a series of transactions.... [A] contract is continuing if it contemplates a future course of dealing during an indefinite period, or if it is intended to cover a series of transactions or succession of credits, or if its purpose is to give to the principal debtor a standing credit to be used by him from time to time. *A continuing guaranty covers all transactions, including those arising in the future, which are within the contemplation of the agreement.*"

38 Am.Jur.2d *Guaranty* § 20 (1999) (emphasis added); *see also Vidimos, Inc. v. Vidimos*, 456 N.E.2d 455, 458 (Ind.Ct.App. 1983) ("continuing guaranty is not limited to single transaction, but contemplates a future course of dealing encompassing a series of transactions"). Moreover, a continuing guaranty "is not limited in time or amount and is operative until revoked." 49 Am.Jur.2d *Landlord and Tenant* § 819 (1995).

The rules governing the interpretation and construction of contracts generally apply to the interpretation and construction of a guaranty contract. *Kordick v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, 496 N.E.2d 119, 123 (Ind. Ct.App.1986). The extent of a guarantor's liability is determined by the terms of his or her contract. *Id.* The terms of a guaranty should neither be so narrowly inter-

preted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within its terms. *Id.* The contract of a guarantor is to be construed based upon the intent of the parties, which is ascertained from the instrument itself read in light of the surrounding circumstances. *Skrypek v. St. Joseph Valley Bank,* 469 N.E.2d 774, 776 (Ind.Ct.App.1984); *Orange–Co., Inc. v. Brown,* 181 Ind.App. 536, 393 N.E.2d 192, 195 (1979).

A guarantor's liability will not be extended by implication beyond the terms of his or her contract. *Goeke v. Merchants Nat'l Bank & Trust Co. of Indianapolis,* 467 N.E.2d 760, 765 (Ind.Ct. App.1984), *trans. denied* (1985). "A guarantor is a favorite in the law and is not bound beyond the strict terms of the engagement. Moreover, a guaranty of a particular debt does not extend to other indebtedness not within the manifest intention of the parties." *Id.*

Under Indiana common-law principles, when parties cause a material alteration of an underlying obligation without the consent of the guarantor, the guarantor is discharged from further liability whether the change is to his or her injury or benefit. *Goeke,* 467 N.E.2d at 765. In *Yin v. Society Nat'l Bank Indiana,* 665 N.E.2d 58, 64 (Ind.Ct.App.1996), *trans. denied* (1997), the court summarized the following rules relating to material alteration of a guaranty:

" 'Guarantors and sureties are exonerated if the creditor by any act, done without their consent, alters the obligation of the principal in any respect or impairs or suspends the remedy for its enforcement.' *Farmers Loan & Trust Co. v. Letsinger,* 652 N.E.2d 63, 66 (quoting *Weed Sewing Machine Co. v. Winchel,* 107 Ind. 260, 7 N.E. 881 (1886)); *see also* 2 WHITE & SUMMERS, § 16–10 at 106 ('The law has traditionally held that conduct by the creditor which increases the surety's risk discharges the surety or reduces the surety's obligation pro

rata.'). Moreover, when the principal and obligee cause a material alteration of the underlying obligation without the consent of the guarantor, the guarantor is discharged from further liability. *Cunningham v. Mid State Bank,* 544 N.E.2d 530, 534 (Ind.Ct.App.1989), *reh. denied, trans. denied; Merchants Nat'l Bank and Trust Co. v. Lewark,* 503 N.E.2d 415, 416 (Ind.Ct.App.1987), *reh. denied, trans. denied.* A material alteration which will effect a discharge of the guarantor must be a change which alters the legal identity of the principal's contract, substantially increases the risk of loss to the guarantor, or places the guarantor in a different position. *Cunningham,* 544 N.E.2d at 534. The change must be binding. *Houin v. Bremen State Bank,* 495 N.E.2d 753, 759 (Ind.Ct. App.1986)."

Furthermore, 49 AM.JUR.2D *Landlord and Tenant* § 822 (1995) (emphasis added) states that:

"A material alteration or departure from the contract of guaranty of a lease, without the guarantor's consent, will discharge the guarantor, whether or not the guarantor is prejudiced thereby. *The guarantor and the surety have a right to stand upon the terms of the contract, and if they do not assent to any variation of it, and a material variation is made, it is fatal to recovery against them. This rule is fully applicable to sureties on leases.*

A material alteration of a lease within the meaning of such rule occurs where an agreement is made between the lessor and lessee changing the terms of the lease, or the time for the payment or rent, or in some cases the amount of the rent payable."

In the present case, the trial court found: 1) the relationship between S–Mart and Sweetwater changed to that of business competitors; 2) the premises could not support two food operations; 3) all parties agreed that the outdoor grill was a

significant change; 4) the risk of loss to Sweetwater was increased because of competition from the grill; and 5) S–Mart stood to gain a significant amount of money from operation of the grill. Based on these findings the trial court concluded that the Lease Amendment was a material alteration of the Lease Agreement. In addition to concluding that the Lease Amendment materially altered the underlying liability, the trial court also concluded that such alteration was not within the contemplation of the parties at the time the guaranty was executed.

A continuing guaranty encompasses all transactions, including those arising in the future, that are within the contemplation of the agreement. 38 Am.Jur.2d *Guaranty* § 20 (1999). Here, there is no indication that, at the time the Lease Agreement was executed, the parties either intended or contemplated the series of future events that eventually led to the Lease Amendment. Although the Wilsons undertook continuing liability, the trial court found that this liability did not include consent to the Lease Amendment because the risks were beyond the scope of what they contemplated when they executed the Lease Agreement. The evidence supports this finding.

Notwithstanding the all-inclusive liability contained in the continuing guaranty, the guaranty merely contemplates a series of debts with respect to the accrual of rental payments. The parties contemplated that the Wilsons, as guarantors, would guarantee the payment of rent as it accrued. At the time the guaranty was executed however the parties did not contemplate that within a matter of months they would become business competitors. As a result, the terms of the Lease Agreement as originally contemplated and guaranteed by the Wilsons expanded beyond their

original liability. *See Farmers Loan & Trust Co. v. Letsinger*, 652 N.E.2d 63, 67 (Ind.1995) (in discussing impairment of collateral defense our supreme court noted that "if the creditor impairs the collateral, and the guarantor has not consented to release or other impairment of the collateral, the guarantor may become exposed to liability beyond the guarantor's expectation at the time the parties entered into the contract.").

We conclude that where a continuing guaranty provides that it applies to modifications of the underlying agreement, in the absence of consent by the guarantors to the modifications, the continuing guaranty will extend to modifications that were either: 1) non-material alterations of the underlying agreement; or 2) material alterations shown to be within the contemplation of the parties at the time the agreement was executed. The questions of materiality and what the parties contemplated at the time the guaranty was executed are questions of fact that must be analyzed on a case by case basis.

Here, the Lease Amendment was a material alteration that was not within the contemplation of the parties at the time the guaranty was executed. The trial court did not err in determining that the Wilsons were not personally liable for the debts of Sweetwater arising from Sweetwater's breach of the Lease Agreement.[2]

Affirmed.

NAJAM J., and VAIDIK, J., concur.

---

2. We note that this litigation could have been avoided had the parties specified in the Lease Amendment that the continuing guaranty applied to the Amendment or no longer applied. Best practice dictates that where an underlying agreement is being modified in a significant way that the parties specifically agree and set forth whether the previously executed guaranty applies or does not apply to these modifications. Absent such action, the par-

ties must accept the risk of how a later amendment or modification will be construed by the courts.