Donald L. FIELDS, Virginia L. Fields and Raymond Marlow, Appellants–Plaintiffs,

v.

Carla CONFORTI, Appellee–Defendant.

No. 32A05–0603–CV–134.

Court of Appeals of Indiana.

June 14, 2007.

Andrew P. Kult, Comer Law Office, Danville, IN, Attorney for Appellants.

Kevin J. Hinkle, James D. Boyer, Hinkle & Gibbs, Danville, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Donald L. Fields and Virginia L. Fields (collectively, the "Fieldses") and Raymond Marlow appeal the trial court's judgment in favor of Carla Conforti. The Fieldses

and Marlow raise five issues, which we consolidate and restate as:

I. Whether the trial court's judgment awarding back rent to Conforti from the Fieldses is clearly erroneous;

II. Whether the trial court's judgment awarding back rent to Conforti from Marlow is clearly erroneous;

III. Whether the trial court's judgment awarding attorney fees to Conforti from Marlow is clearly erroneous; and

IV. Whether the trial court's judgment awarding attorney fees to Conforti from the Fieldses is clearly erroneous.

We affirm in part, reverse in part, and remand.

Although we are unanimous in our decision as to Issues I, II, and III, we differ on Issue IV. Judge Sharpnack writes for the panel on Issues I, II, and III. Judge Kirsch writes for the panel on Issue IV with the concurrence of Judge Mathias and a dissent by Judge Sharpnack.

Before addressing the arguments raised by the Fieldses and Marlow, we note that they did not submit a transcript of the bench trial upon which the trial court's findings of fact and conclusions thereon are based. Ind. Appellate Rule 9(F)(4) provides:

> The Notice of Appeal shall designate all portions of the Transcript necessary to present fairly and decide the issues on appeal. If the appellant intends to urge on appeal that a finding of fact or conclusion thereon is unsupported by the evidence or is contrary to the evidence, the Notice of Appeal shall request a Transcript of all the evidence.

The Indiana Supreme Court addressed a similar situation in *Pabey v. Pastrick*, 816 N.E.2d 1138, 1141–1142 (Ind.2004), *reh'g denied*. There, the appellant failed to submit a transcript of the evidentiary hearing. The appellant argued that no transcript was necessary because he did not contend that the trial court's findings of fact were unsupported by the evidence; in fact, he repeatedly cited the trial court's findings of fact and did not reference facts outside those found by the trial court. 816 N.E.2d at 1142. Relying in part upon Ind. Appellate Rule 49(B), which provides that the failure to include an item in an appendix shall not waive any issue or argument, and Ind. Appellate Rule 9(G), which allows supplemental requests for transcripts to be filed, the court held that the appellants' failure to submit a transcript was not a basis for dismissing the appellants' appeal. *Id.*

The court also relied upon its opinion in *In re Walker*, 665 N.E.2d 586, 588 (Ind. 1996). In *Walker*, the appellants did not submit a transcript and argued that a transcript was unnecessary because there was no challenge to the trial court's findings of fact and the appellate review entailed determining only whether the findings supported the judgment and whether the conclusions of law and the judgment were clearly erroneous based upon the findings. 665 N.E.2d at 588. The court noted that the "failure to include a transcript works a waiver of any specifications of error which depend upon the evidence." *Id.* (quoting *Campbell v. Criterion Group*, 605 N.E.2d 150, 160 (Ind.1992), and discussing prior appellate rules). However, the court encouraged "litigants to utilize and reviewing courts to permit the utilization of procedures that minimize expense and administrative burdens for the parties and the court system." *Id.* Consequently, the court addressed the issues presented in the appeal. *Id.*

■ Based upon *Pabey* and *Walker*, we will attempt to address the issues raised by the Fieldses and Marlow. However, any arguments that depend upon the evidence presented at the bench trial will be waived. *See Walker*, 665 N.E.2d at 588; *see also Kocher v. Getz*, 824 N.E.2d 671, 675 (Ind.2005) (holding that, where the appellant failed to provide a transcript of the trial court's hearing on his motion to stay execution and request for bond less than the full amount of the judgment, appellant failed to demonstrate that the trial court abused its discretion).

We now set out the relevant facts as stated in the trial court's findings of fact. In 2002, Marlow learned that Conforti was interested in selling her residence and approached Conforti about acquiring the property by means of an installment land sale contract for his mother and stepfather, the Fieldses. Conforti learned from her mortgage company that she could not sell her home by using a land contract because it violated the terms of her mortgage loan. Marlow then suggested to Conforti that a lease with an option to purchase be used and provided the forms to Conforti.

On August 30, 2002, Conforti and Marlow entered into a Residential Lease with Option to Purchase ("Lease"). In the Lease, Conforti agreed to lease residential property to Marlow from September 1, 2002, to August 31, 2004. The Lease contained an option to purchase the property if exercised within the two-year term of the Lease. The Lease also contained a provision regarding holding over after the expiration of the Lease and provided: "Any holding over after expiration of the term of this lease, with the consent of the Lessor, shall be construed as a month-to-month tenancy in accordance with the terms hereof, as applicable." Appellants' Appendix at 76. The Lease also provided:

"The prevailing party shall be entitled to all costs incurred in connection with any legal action brought by either party to enforce the terms hereof or relating to the demised premises, including reasonable attorneys' fees." *Id.* The Lease specified a monthly rent of $636.00, which was the amount of Conforti's mortgage payment. The rent was later increased to $649.00 when Conforti's mortgage payment increased.

Marlow and Conforti also signed a "Permission to Sublet" form, in which Conforti granted Marlow the right to sublet the residence to the Fieldses. The Permission to Sublet also provided: "This permission to sublet in no way releases [Marlow] from any obligation, responsibility or duty of [Marlow] as set forth in the above-described lease." *Id.* at 78. The Permission to Sublet also provided: "In the event legal action is required to enforce any provision of this agreement, the prevailing party shall be entitled to recover reasonable attorney fees and costs." *Id.* The trial court found that Conforti and Marlow agreed "[t]hat the Fields[es] were to occupy the Property under the Lease and make the payments under the Lease." *Id.* at 14. However, the trial court also found that "Conforti testified that she never discussed the terms of the lease with the Fields prior to signing it." *Id.* at 13.

Marlow gave oral permission to the Fieldses to move into the residence. Marlow did not execute a written assignment or sublease of the Lease to the Fieldses. The Fieldses moved into the residence on September 1, 2002, and made rental payments directly to Conforti. On August 30, 2004, Conforti received notice from the Fieldses indicating their desire to exercise the option to purchase the property under the Lease. Although the Fieldses scheduled a closing, Conforti did not appear at the closing, and the Fieldses "failed to

show that they had cash, funds, a loan or the ability to obtain a loan that would enable them to purchase the Property at the time of closing on the Property even if they had the right to do so under the Lease." *Id.* at 17.

On November 1, 2004, Conforti provided Marlow and the Fieldses with written notice that the Lease had expired on August 31, 2004, and that Marlow and the Fieldses were holdover tenants. The notice indicated that the amount owed for rent would be increased to $850.00 per month effective on December 1, 2004. The Fieldses responded by filing a complaint against Conforti for specific performance. The Fieldses also informed Conforti that they would not pay the increased amount of rent. On December 21, 2004, Conforti provided Marlow and the Fieldses with notice that they were in default for failing to pay the increased rent. The Fieldses did not vacate the property and, as of December 31, 2005, owed $2,613.00 to Conforti.

In response to the Fieldses' complaint, Conforti filed a counterclaim against the Fieldses for breach of the Lease. Conforti also filed a third-party complaint against Marlow for breach of the Lease and fraud. After a bench trial, the trial court entered findings of fact and conclusions thereon. The trial court concluded that: (1) the Fieldses were not entitled to specific performance because they were not parties to the Lease and option to purchase the real estate and because any assignment had to be in writing; (2) the Fieldses occupied the property as sublessees pursuant to an oral agreement with Marlow; (3) both the Fieldses and Marlow were in default on the rent payments and were liable to Conforti for $2,613.00; (4) the Fieldses were liable for Conforti's attorney fees in the amount of $31,125.58 because the Fieldses "continued to litigate the action for specific performance after it should have become clear to them that they had no right to exercise the option to purchase under the Lease"; and (5) Marlow was liable for Conforti's attorney fees in the amount of $31,125.58 because of the prevailing party clause in the Lease. Appellants' Appendix at 10–23.

■■■ The trial court apparently entered findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A). In general, we may not set aside the findings or judgment unless they are clearly erroneous. *Menard, Inc. v. Dage–MTI, Inc.,* 726 N.E.2d 1206, 1210 (Ind.2000), *reh'g denied.* In our review, we first consider whether the evidence supports the factual findings. *Id.* Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind.1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Menard,* 726 N.E.2d at 1210.

We give due regard to the trial court's ability to assess the credibility of witnesses. *Id.* While we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.* We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon,* 711 N.E.2d 1265, 1268 (Ind.1999). However, as noted above, Appellants did not submit the transcript of the bench trial. Consequently, we cannot determine whether the evidence supports the factual findings, and we will consider only the arguments presented regarding the trial court's conclusions.

### I.

The first issue is whether the trial court's judgment awarding back rent to

Conforti from the Fieldses is clearly erroneous. The trial court found that the Fieldses were sublessees, that the Fieldses became holdover month-to-month tenants, and that both Marlow and the Fieldses were liable for the Fieldses' failure to pay the increased rent. The Fieldses do not dispute the trial court's finding that they were sublessees. According to the Fieldses, the trial court erred because, as sublessees, they were not in privity with Conforti and could not be considered holdover tenants under Marlow's lease. Further, the Fieldses argue that, even assuming they were holdover tenants under Marlow's lease, Conforti was not allowed to increase the rent during the holdover period.

■■■ "[A] party's obligation to pay rent may rest separately on either of two reasons, one by privity of contract and the other by privity of estate." *Powell v. Jones,* 50 Ind.App. 493, 497, 98 N.E. 646, 647 (1912). In general, "[a]n assignment is the transfer by a lessee of one's entire leasehold interest, while a sublessor transfers less than his entire leasehold interest so that he retains an interest in the leasehold." *Bd. of Comm'rs of Delaware County v. Lions Delaware County Fair, Inc.,* 580 N.E.2d 280, 284 (Ind.Ct.App.1991), *trans. denied.* A sublease, rather than an assignment, is at issue here.

■■■ "A sublease ... does not transfer a lessee's rights or obligations under the lease." *Id.* "The original lessee remains liable to the landlord for the payment of rent." *Shadeland Dev. Corp. v. Meek,* 489 N.E.2d 1192, 1199 (Ind.Ct.App. 1986), *reh'g denied, trans. denied.* In general, when the property is subleased, "the original landlord has no right of action against the transferee of the lessee, there being neither privity of contract nor privity of estate between them." *Indian Re-*

*fining Co. v. Roberts,* 97 Ind.App. 615, 620, 181 N.E. 283, 285 (1932); *see* 18 IND. LAW ENCYCLOPEDIA § 43 ("Generally, there is no privity of estate or of contract between the original lessor and the subtenant, and the lessor has no right of action directly against the sublessee on covenants running with the land."). Thus, in general, Conforti, as original landlord, would have a right of action against Marlow, the original lessee; however, Conforti would have no right of action against the sublessee, the Fieldses.

Conforti concedes that, in general, neither privity of estate nor privity of contract exists between a lessor and a sublessee. However, Conforti argues that privity of estate exists based upon the conduct and relationship of the parties. In support of her argument, Conforti cites *Klein v. Niezer & Co.,* 92 Ind.App. 43, 169 N.E. 688 (1930), and *Powell v. Jones,* 50 Ind.App. 493, 98 N.E. 646 (1912). In *Klein,* the court noted that "[a] sublessee, in the absence of a contract otherwise, is liable only by reason of privity of estate, and when that privity ceases, liability ceases; but the obligation of the original lessee is created by privity of contract, and that privity is not affected by failure of such lessee to occupy the premises." 92 Ind.App. at 46, 169 N.E. at 689. In *Powell,* the court noted that "[b]y merely collecting rent from the assignee or sublessee the landlord does not discharge the original lessee, who is bound by an express promise. He is only receiving from the sublessee that which has accrued to him by the privity of estate and what he had a legal right to claim." 50 Ind.App. at 497–498, 98 N.E. at 647. However, neither *Klein* nor *Powell* held that a sublessee is directly liable to the landlord for rent in the absence of an express agreement to the contrary.[1]

1. Conforti also relies upon *Riverbend Investors* *v. Progressive Surface Preparation, L.L.C.,* 255

While these two cases indicate in dicta that a sublessee has privity of estate, we find *Indian Refining,* which conforms to the general rule that a landlord has no right of action against a sublessee, more persuasive. We conclude that, in the absence of an express agreement to the contrary, a landlord has no right of action against a sublessee. *Cf.* Ind.Code § 32–31–1–12 ("A sublessee has the same remedy under the original lease against the chief landlord as the sublessee would have had against the immediate lessor.").

█ Although the trial court's findings indicate that Conforti and Marlow agreed that the Fieldses would pay the rent directly to Conforti, the trial court's findings indicate that Conforti did not discuss the lease with the Fieldses. Consequently, as a matter of law, the Fieldses were not directly liable to Conforti for the rent. The trial court's conclusion that the Fieldses were liable to Conforti for $2,613.00 is clearly erroneous.

## II.

The next issue is whether the trial court's judgment awarding back rent to Conforti from Marlow is clearly erroneous. The trial court found:

> After Marlow and the Fields received notice of default of the Lease, the Fields became hold over month-to-month renters. Since Conforti never released Marlow from the Lease (see paragraph 5 of the Permission to Sublet), both Marlow and the Fields are in default in rental payments due in the amount of $201.00 per month for 13 months to the date of this order for a total of $2,613.00.

Appellants' Appendix at 19. According to Marlow, the trial court's finding is clearly

erroneous because the failure to pay the full rental payments occurred after the term of his Lease with Conforti expired.

█ As noted above, "[a] sublease ... does not transfer a lessee's rights or obligations under the lease." *Id.* "The original lessee remains liable to the landlord for the payment of rent." *Shadeland Dev. Corp. v. Meek,* 489 N.E.2d 1192, 1199 (Ind. Ct.App.1986). "In the absence of a stipulation releasing a lessee who has assigned his lease or sublet the property from liability for rent, acceptance of rent by the lessor from the assignee or sublessee and a mere agreement to receive him as tenant does not relieve the lessee from such liability." *Powell,* 50 Ind.App. at 498, 98 N.E. at 647. Despite this principle, Marlow argues that he could not be liable for the Fieldses' failure to pay rent after the Lease term ended.

█ Indiana courts have not considered a tenant's liability for a sublessee's holding over. However, Conforti cites *Young v. Dist. of Columbia,* 752 A.2d 138, 142 (D.C.2000), which we find persuasive. In *Young,* the court held that "[w]here a tenant subleases property, the tenant has a responsibility to see that the subtenant vacates the premises in order to surrender them to the landlord without further liability." 752 A.2d at 142. "If a subtenant holds over, it is effectively a holding over by the tenant, and the landlord can hold the tenant liable for damages for the holdover period." *Id.*

█ The "Permission to Sublet" signed by Marlow and Conforti provided that the permission to sublet "in no way release[d]" Marlow from "any obligation, responsibility or duty of [Marlow] as set forth in the

Mich.App. 327, 660 N.W.2d 373 (2003). In *Riverbend,* the Michigan Court of Appeals held that, although a sublessee was liable to a landlord for rent based upon privity of estate,

the obligation to pay rent ceased upon the sublessee vacating the property. However, based upon *Indian Refining,* we decline to follow *Riverbend.*

above-described lease." Appellants' Appendix at 78. Even though the term of the Lease ended on August 31, 2004, the Lease provided that "[a]ny holding over after expiration of the term of this lease, with the consent of the Lessor, shall be construed as a month-to-month tenancy in accordance with the terms hereof, as applicable." *Id.* at 76. As in *Young*, it was Marlow's duty as tenant to see that the Fieldses, his sublessees, vacated the property in a timely manner, and Marlow is liable for any damages during the holdover period.

Marlow also argues that, even if he could be held liable for breaches during the holdover period, he could not be held liable for damages resulting from the Conforti's unilateral increase in the rent during the holdover period. According to Marlow, Conforti did not have the right to increase the rent during the holdover period. Marlow relies in part upon *Houston v. Booher,* 647 N.E.2d 16 (Ind.Ct.App.1995). In *Houston,* this court held that "[i]n the absence of an agreement to the contrary, when a tenant holds over beyond the expiration of the lease and continues to make rental payments, and the lessor does not treat the tenant as a trespasser by evicting him, the parties are deemed to have continued the tenancy under the terms of the expired lease." 647 N.E.2d at 19. "When the original lease was for more than one year, the renewal lease is for a year at a time." *Id.*

 According to Marlow, because the original Lease was for one year, Conforti was required to continue the Fieldses' tenancy for another year under the same rental terms as the Lease. We disagree. The Lease specifically provided that any holdover tenancy would be construed as a "month-to-month tenancy in accordance with the terms hereof, as applicable." Appellants' Appendix at 76. A month-to-

month tenancy may be terminated or the rent may be changed by the landlord giving a one-month notice to the tenant. *Speiser v. Addis,* 411 N.E.2d 439, 441 (Ind. App.1980) (citing Ind.Code § 32–7–1–3, *see now* Ind.Code § 32–31–1–4); *see also Barber v. Echo Lake Mobile Home Cmty.,* 759 N.E.2d 253, 257 (Ind.Ct.App.2001) (holding that a month-to-month tenancy was properly terminated without cause and with one-month notice). To require Conforti to keep the rent the same during the holdover tenancy would require us to ignore the implications of a month-to-month tenancy. On November 1, 2004, Conforti gave Marlow and the Fieldses notice that the rent would be increased effective December 1, 2004. Despite the sublease to the Fieldses, Marlow was obligated under the Lease to pay Conforti or vacate the property, and he failed to do either. The trial court's conclusion that Marlow was liable to Conforti for $2,613.00 is not clearly erroneous.

### III.

 The next issue is whether the trial court's judgment awarding attorney fees to Conforti from Marlow is clearly erroneous. The Lease, which was signed by Marlow and Conforti, provided that "[t]he prevailing party shall be entitled to all costs incurred in connection with any legal action brought by either party to enforce the terms hereof or relating to the demised premises, including reasonable attorneys' fees." Appellants' Appendix at 76. Further, the Permission to Sublet provided: "In the event legal action is required to enforce any provision of this agreement, the prevailing party shall be entitled to recover reasonable attorney fees and costs." *Id.* at 78. The trial court ordered that Marlow and the Fieldses pay Conforti's attorney fees in the amount of $31,125.58. On appeal, Marlow argues

that the trial court's conclusion is clearly erroneous because the Lease term expired on August 31, 2004, and the Fieldses, not Marlow, were holdover tenants.

We addressed this same argument above. *See supra* Part II. The "Permission to Sublet" signed by Marlow and Conforti provided that the permission to sublet "in no way release[d]" Marlow from "any obligation, responsibility or duty of [Marlow] as set forth in the above-described lease." Appellants' Appendix at 78. It was Marlow's duty as tenant to see that the Fieldses vacated the property in a timely manner, and Marlow is liable for any damages during the holdover period. Consequently, the trial court's conclusion that Marlow was liable for Conforti's attorney fees is not clearly erroneous.[2]

KIRSCH, J., and MATHIAS, J., concur.

## IV.

KIRSCH, Judge, concurring.

 The final issue is whether the trial court's judgment awarding attorney fees to Conforti from the Fieldses is clearly erroneous. The trial court concluded that the Fieldses were liable for Conforti's attorney fees under Ind.Code § 34–52–1–1(b), which provides:

In any civil action, the court may award attorney fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

The trial court concluded that the Fieldses "continued to litigate the action for specific performance after it should have become clear to them that they had no right to exercise the option to purchase under the Lease. They were not parties to the Lease and no written assignment was made to them whereby they legally stepped into Marlow's shoes." Appellants' Appendix at 20–21.

The trial court does not identify at what point "it should have become clear to [the Fieldses] that they had no right to exercise the option to purchase under the lease." This matter was decided by a trial on the merits. It was not until the trial court entered its judgment that it was clear that the Fieldses had no right to exercise the option. If it had been clear earlier, this matter could have been terminated much less expensively by a motion to dismiss, a motion for summary judgment or, at the least, a motion for judgment on the evidence at trial. Rather, the parties took two days litigating this matter, and the trial court took six weeks deciding it. In deciding this case, the trial court did not find that the parties to the contract did not have the intent that the Fieldses would have an option to purchase the property, but rather concluded that any such option was unenforceable due to the Indiana Statute of Frauds. The vagaries of the statute and its numerous exceptions do not provide fertile ground for concluding that a lawsuit seeking to give effect to the parties' intent is frivolous. The fact that the Fieldses did not prevail on their claim at trial does not make their claim frivolous. Something more is required and that something is not present here.

---

**2.** Marlow also argues that he should be the prevailing party and requests reimbursement of his attorney fees. Having found that Mar-low breached the Lease, *see supra* Part II, we must disagree with Marlow's request for attorney fees.

Here, the trial court concluded that "this case represents a classic example of two people not trained in the preparation of legal documents failing to record accurately their intended agreement as to the option to purchase the real estate." Appellants' Appendix at 22. We agree. We reverse the award of attorney fees to Conforti from the Fieldses.

In summary, all judges on the panel concur in reversing on Issue I and affirming on Issues II and III. Judge Kirsch and Judge Mathias concur in reversing on Issue IV.

Affirmed in part, reversed in part, and remanded.

MATHIAS, J., concurs.

SHARPNACK, J., dissents as to Issue IV with separate opinion.

SHARPNACK, Judge, dissenting.

I am unable to concur in the conclusion that the trial court erred by awarding attorney fees to Conforti from the Fieldses. The trial court concluded that the Fieldses were liable for Conforti's attorney fees under Ind.Code § 34–52–1–1(b), which provides:

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
>
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>
> (3) litigated the action in bad faith.

The trial court concluded that the Fieldses "continued to litigate the action for specific performance after it should have become clear to them that they had no right to exercise the option to purchase under the Lease. They were not parties to the Lease and no written assignment was made to them whereby they legally stepped into Marlow's shoes." Appellants' Appendix at 20–21.

On appeal, the Fieldses argue that the assignment was not required to be in writing. Further, the Fieldses contend that the argument that they were Marlow's assignees rather than sublessees was reasonable. In response, Conforti argues that it is not possible to consider the Fieldses' argument in light of their failure to provide this court with a transcript of the evidence. In their reply brief, the Fieldses contend that we are able to review this issue despite their failure to provide the transcript based upon the findings of fact viewed in conjunction with the definition of assignment and established caselaw.

The Fieldses make much of the fact that the trial court's finding that any assignment had to be in writing because the Lease contained an option to purchase the property. However, I conclude that even if we assume that the Fieldses are correct and an assignment was not required to be in writing, the Fieldses' argument fails. "An assignment is the transfer by a lessee of one's entire leasehold interest, while a sublessor transfers less than his entire leasehold interest so that he retains an interest in the leasehold." *Lions Delaware County Fair*, 580 N.E.2d at 284. The trial court's findings indicate that, in addition to the Lease, which permitted assignment and subletting, Marlow and Conforti signed a Permission to Sublet, which specifically allowed Marlow to sublet the property to the Fieldses. The Fieldses lived at the residence and paid rent directly to Conforti. However, the findings of fact contain no other information regarding Marlow's transfer of his interest in the property to the Fieldses. I am

unable to review the testimony concerning whether Marlow and the Fieldses entered into an assignment or a sublease because we were not provided with that testimony. Without the transcript of the evidence, I conclude that we simply cannot say that the trial court's conclusion regarding the Fieldses' behavior is clearly erroneous. *See, e.g., Kocher*, 824 N.E.2d at 675 (holding that, where the appellant failed to provide a transcript of the trial court's hearing on his motion to stay execution and request for bond less than the full amount of the judgment, appellant failed to demonstrate that the trial court abused its discretion). Accordingly, I would affirm the trial court's grant of attorney fees from the Fieldses, and I dissent as to Issue IV.