## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 15 2015, 8:56 am

CLERK
of the supreme court,
court of appeals and
tax court

---

**APPELLANT PRO SE**

Bill Snider
Michigan City, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Bill Snider,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 15, 2015

Court of Appeals Cause No. 71A03-1409-PC-334

Appeal from the St. Joseph Superior Court

The Honorable Jerome Frese, Judge

Cause No. 71D02-0511-PC-42

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Bill Snider (Snider), appeals the post-conviction court's denial of his amended petition for post-conviction relief.

We affirm.

## ISSUE

Snider raises one issue on appeal, which we restate as: Whether the post-conviction court erred in denying his petition.

## FACTS AND PROCEDURAL HISTORY

In 2001, Snider was renting a room in J.K.'s three bedroom house in South Bend, Indiana. J.K. also rented out a room to F.L. and F.L.'s minor daughter B.A., born on July 19, 1989. During that time, J.K. resided with her daughter, M.W., and M.W.'s minor daughter, M.C., born on September 2, 1987. The record shows that M.W. and M.C. moved out of J.K.'s house but would frequently visit. For the times that M.C. was at J.K.'s house for a visit, she would spend time with B.A., and they became friends.

According to M.W, in the spring of 2001, whenever she and M.C. visited J.K. in her Sound Bend home, she observed B.A. spending a significant amount of time in Snider's room, both with the door open and closed. M.C. would often join B.A. and Snider in the room, but M.W. made sure the door was open at all times. In the summer of 2001, B.A.'s and M.C.'s relationship with Snider became sexual. Snider kissed B.A. and he also began touching her breasts and

vagina, both over and under her clothes. Snider also performed oral sex on B.A., and B.A. discovered that Snider was not circumcised. These events partly occurred in Snider's room, and in R.M.'s—Snider's girlfriend—apartment in Mishawaka, Indiana. M.C. was often present when these events occurred. On one afternoon in his room at J.K.'s house, Snider performed oral sex on M.C. in front of B.A. In addition, M.C. performed oral sex on Snider after watching Snider perform oral sex on B.A. M.C. also fondled Snider's penis until he ejaculated. When B.A. left the room, Snider threatened to kill M.C. if she disclosed to anyone what had transpired.

[6] After a 4th of July party at R.M.'s apartment, R.M. observed Snider kiss B.A. and also slap B.A. on her buttocks. R.M. informed Snider that she had seen him, and she reprimanded him for his inappropriate conduct with B.A. Snider responded by stating that it had been ongoing. On another occasion that summer, B.A. and M.C. went to R.M.'s apartment. R.M., at Snider's directive, instructed B.A. and M.C. to put on lingerie. Once the girls were dressed, Snider performed oral sex on B.A. Snider then asked R.M. to perform oral sex on him, which she did. Snider also performed oral sex on M.C. Snider then asked B.A. to have intercourse, but B.A. refused. At some point, M.C. became uncomfortable and she tried calling for a ride home. Both Snider and R.M. seized the phone from M.C. and hid it. M.C. spent the night at R.M.'s apartment.

[7] In the fall of 2001, B.A. moved to Elkhart, Indiana but soon returned to South Bend and her sexual relationship with Snider resumed. Snider continued to

engage in oral sex with B.A. and Snider promised B.A. that he was going to marry her. In April of 2002, B.A. confided in F.L. about being molested by Snider. As a concerned mother, F.L. called M.W. and advised her to talk to M.C. When M.W. questioned M.C., M.C. began crying and said, "I don't want to tell you." (Transcript p. 481). The following day, M.W. contacted the police.

[8] On May 8, 2002, the State filed an Information charging Snider with one Count of child molesting, a Class C felony on B.A., two Counts of child molesting, Class A felonies on B.A, and one Count of child molesting, a Class A felony on M.C. Snider's first jury trial commenced on October 13, 2003, but it resulted in a hung jury. A subsequent jury trial was held on March 26-30, 2004, after which the jury found Snider guilty as charged. On May 11, 2004, the trial court sentenced Snider to four years on the Class C felony charge, and thirty years each for the three Class A felonies all to run concurrently to the Class C felony. Nonetheless, the trial court ordered that one of the thirty-year sentence for the Class A felony offense to run consecutive to the rest. Snider's aggregate sentence was sixty years.

[9] In direct appeal, *Snider v State* 71A05-0409-CR-523 (Ind. Ct. App. Feb. 15, 2005), Snider contended that: (1) there was insufficient evidence to convict him on all charges since the State had failed to present evidence that B.A. was under fourteen years of age; and (2) there was insufficient evidence to convict him on all molesting charges since M.C.'s testimony was inherently improbable. On the first issue, we found that the State had established during trial that B.A. was

thirteen years old when all the molestations took place. As for the second issue, we found that M.C.'s testimony was corroborated by B.A.'s testimony. Therefore, we affirmed Snider's convictions.

[10] On November 7, 2005, Snider filed a *pro se* petition for post-conviction relief (PCR Petition) and a State public defender was appointed. On December 1, 2005, the State public defender entered an appearance for Snider, and on December 16, 2005, he moved for a change of judge and filed a Verified Notice of Present Inability to Investigate. On February 2, 2006, based on the motion, the post-conviction court continued the proceeding pending a Certificate of Readiness from the public defender. On September 17, 2008, the post-conviction court accepted the public defender's withdrawal from the case. On November 21, 2008, Snider entered an appearance on his own behalf. The following year, in February 2009, the post-conviction court directed Snider to advise it whether he was proceeding with his *pro se* PCR Petition. On March 9, 2010, Snider filed a motion to amend his PCR Petition, and the State filed its response.

On February 13, 2014, the post-conviction court held an evidentiary hearing on Snider's amended PCR Petition.[1] At the close of the hearing, the post-conviction court ordered the State to file its response. On August 14, 2014, the post-conviction court issued its findings of fact and conclusion thereon denying Snider's amended PCR Petition.

Snider now appeals. Additional information will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Snider presents several arguments challenging the trial court's denial of his PCR petition. In a post-conviction proceeding, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Overstreet v. State*, 877 N.E.2d 144, 151 (Ind. 2007). When challenging the denial of post-conviction relief, the petitioner appeals a negative judgment. *Overstreet*, 877 N.E.2d at 151. To prevail, the petitioner must show that the evidence leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Id*. We will disturb the post-conviction

---

[1] In his Appendix, Snider included his amended PCR Petition, the State's response, and the Order denying his petition. The transcript of the evidentiary hearing is not before us because it was not requested in the Notice of Appeal. *See* Ind. Appellate Rule 9(F)(4).

court's decision only where the evidence is without conflict and leads to but one conclusion and the post-conviction court reached the opposite conclusion. *Henley v. State*, 881 N.E.2d 639 (Ind. 2008).

[14] Where the post-conviction court enters findings of fact and conclusions of law, as in the instant case, we do not defer to the post-conviction court's legal conclusions; the post-conviction court's findings and judgment will be reversed, however, only upon a showing of clear error that leaves us with a definite and firm conviction that a mistake has been made. *Overstreet*, 877 N.E.2d at 151.

[15] We begin by noting that Snider presented several free-standing claims in his amended PCR Petition. Specifically, Snider set forth free-standing claims to the effect that the prosecutor engaged in misconduct by: (1) misrepresenting facts in order to obtain an arrest warrant; (2) eliciting false testimony from the State's witnesses; and (3) violating a separation order since the State witnesses sat together during recess. Complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal. *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002). Snider makes no attempt to demonstrate that any of the above issues were unavailable to him at his trial or during his direct appeal. And insofar as those issues are not framed in the context of ineffective assistance of counsel, but instead are "free standing claim[s] of fundamental error," they are not available for our review of the post-conviction court's order. *Lindsey v. State,* 888 N.E.2d 319, 322 (Ind. Ct. App.

2008) (internal quotation marks omitted), *trans. denied.* Accordingly, Snider has waived each of those issues, and we will not review them. *See id*. at 325.

[16] As for Snider's freestanding issue of prosecutorial misconduct, we note that this is not available on post-conviction relief. We therefore proceed to address his ineffective assistance of counsel claims only.

## II. *Ineffective Assistance of Counsel*

[17] The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005), (citing *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984), *reh'g denied*, trans. *denied.* The two prongs of the *Strickland* test are separate and independent inquiries. *Johnson*, 832 N.E.2d at 996. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001) (quoting *Strickland*, 466 U.S. at 697), *reh'g denied; cert. denied,* 537 U.S. 839 (2002).

[18] Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord those decisions deference. *Id.* A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the

exercise of reasonable professional judgment. *Id*. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id*. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*. Furthermore, we will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Johnson*, 832 N.E.2d at 997.

[19] Here, Snider reiterates the issues raised in his amended PCR Petition where he argues that he received ineffective assistance of trial counsel since his counsel: (1) failed to point out B.A.'s age at his trial; (2) failed to call witnesses; (3) failed to highlight inconsistencies in the State's witness's testimonies; (4) failed to investigate; and (5) made prejudicial statements during the closing arguments. With respect to appellate counsel, Snider argues that counsel was ineffective for failing to raise the issue on B.A.'s age in his direct appeal. Notwithstanding Snider's numerous claims of his trial and appellate counsel's ineffectiveness, notably, the Order issued by the post-conviction court on August 14, 2014, addresses a single issue—whether trial and appellate counsel were ineffective for failing to present or contend B.A.'s age during Snider's trial.

[20] Indiana Appellate Rule 9(F)(4) provides:

> The Notice of Appeal shall designate all portions of the Transcript necessary to present fairly and decide the issues on appeal. If the

appellant intends to urge on appeal that a finding of fact or conclusion thereon is unsupported by the evidence or is contrary to the evidence, the Notice of Appeal shall request a Transcript of all the evidence. In Criminal Appeals, the Notice of Appeal must request the Transcript of the entire trial or evidentiary hearing, unless the party intends to limit the appeal to an issue requiring no Transcript.

[21] Our Supreme Court has held that, "[a]though not fatal to an appeal, failure to include a transcript works a waiver of any specifications of error which depend upon the evidence." *In re Walker*, 665 N.E.2d 586, 588 (Ind. 1996) (quoting *Campbell v. Criterion Group*, 605 N.E.2d 150, 160 (Ind. 1992), and discussing prior appellate rules). While we may address issues on appeal that do not challenge the trial court's findings of fact, any arguments that depend upon the evidence presented at trial are waived. *Fields v. Conforti*, 868 N.E.2d 507, 511 (Ind. Ct. App. 2007). As we stated above, the Order addresses a single issue. Presumably, all the above issues were heard or not, at Snider's evidentiary hearing; yet, Snider specifically did not request the transcript. Under the circumstances, we are unwilling to address other issues raised in Snider's amended PCR Petition that went unaddressed in the Order. Snider, as the appellant, had the responsibility to support his claim by presenting a sufficient record so that this court may conduct an intelligent review of the issues. Since Snider did not provide us with his evidentiary transcript, our review is entirely limited to the finding of facts and conclusions reached in the Order.

## A. *Trial Counsel*

[22] Turning to Snider's first issue concerning whether trial counsel rendered ineffective assistance when counsel failed to argue B.A.'s age at trial, during

trial, the State presented evidence that B.A. was born on September 2, 1987, and that she was thirteen years old when Snider molested her. The charging Information indicated that the Class C felony of child molesting took place on or between the 1st day of January and 1st day of March 2001. B.A. testified during trial that in the spring of 2001, Snider touched her breast and vagina, both over and under her clothes. As for the two Class A felonies of child molesting on B.A., the charging Information stated that it occurred on or between the 1st day of June and 1st day of September, 2001. The record shows that in the summer, Snider engaged in oral sex with B.A. On another occasion that summer, B.A. and M.C. went to R.M.'s apartment where B.A performed oral sex on Snider, and M.C. performed oral sex on Snider after watching Snider perform oral sex on B.A. In addition, B.A. testified that she was thirteen years old. In light of the foregoing, it is clear that at all times, B.A. was thirteen years old when Snider molested her. As such, Snider has not shown that he was prejudiced by his trial counsel's failure to present or argue B.A.'s age during his trial.

## B. *Appellate Counsel*

[23] "As for appellate counsel, ineffective assistance claims 'generally fall into three basic categories: (1) denial of access to an appeal, (2) waiver of issues, and (3) failure to present issues well.'" *Garrett v. State*, 992 N.E.2d 710, 724 (Ind. 2013) (quoting *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006) *trans. denied*).

[24] "To show that counsel was ineffective for failing to raise an issue on appeal, the defendant must overcome the strongest presumption of adequate assistance,

and judicial scrutiny is highly deferential." *Manzano v. State*, 12 N.E.3d 321, 329 (Ind. Ct. App. 2014) (citing *Reed*, 856 N.E.2d at 1195). Furthermore,

> [t]o evaluate the performance prong when counsel failed to raise issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. If the analysis under this test demonstrates deficient performance, then we examine whether "the issues which . . . appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial." Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel.

*Id.* at 329-30. (internal quotation marks omitted). Here, Snider argues that his appellate counsel rendered ineffective assistance because he failed to argue in the direct appeal that B.A.'s age was not established during his trial. As discussed above, at all times, B.A. was thirteen years old when she was molested. Even if appellate counsel presented that issue on appeal, it would not have been the stronger issue. *See Bieghler,* 690 N.E.2d at 194. As such, we find that Snider has not demonstrated that but for his appellate counsel's alleged error, there is a reasonable probability that the result of the proceeding would have been different. *See McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (holding that a petitioner must show a reasonable probability that but for counsel's errors the result of the proceeding would have been different). In light of the foregoing, we find that Snider has failed to show that his appellate counsel's performance was deficient or that he was prejudiced as a result of

counsel's performance, thus defeating his claim of ineffective assistance of counsel.

## CONCLUSION

In conclusion, we find that Snider did not establish ineffective assistance of trial and appellate counsel.

Affirmed.

Bailey, J. and Barnes, J. concur